IC

**RECEIVED**

SEP 19 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES
DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

PEDRO DONALDSON, )
Plaintiff, )
v. )  No.
)  1:24-cv-08664
NAKESHIA THOMPSON, 6807 NORTH )  Judge Robert W. Gettleman
SHERIDAN PROPERTY OWNERS, LLC, )  Magistrate Judge Jeffrey Cole
and SPIRIT MANAGEMENT SERVICES, )  Cat 2 Random Assignment
LLC, )
Defendants. )

## COMPLAINT

NOW COMES Pedro Donaldson, the Plaintiff, *pro se,* and asserts the following in support of his Complaint.

## INTRODUCTION

1. Donaldson was a homeless Veteran living on the Blue Line "L" train.

2. 2019, Donaldson moved into Vivian Apartments with a HUD-VASH voucher.

3. 2019-2023, Green Village, management, never had a problem with his voucher.

4. 2019-2023, Sarah, manager and Landlord agent, never served an eviction notice.

5. 2019-2023, maintenance never entered his apartment for repairs without his consent while he was asleep naked.

6. Two months after change of ownership, 6807 N. Sheridan Property Owners LLC., Spirit Management Services, LLC. and Ms. Nakeshia Thompson, began unequal treatment.

7. In 1-year, Donaldson suffered the following unequal treatments from Defendants:

Aug. 2023 "invasion of privacy" by "wrongful entry" into apartment;
Aug. 2023 "invasion of privacy" by "wrongful entry" into apartment;
Oct. 2023 "Landlord's Ten Days Notice" for $3,112.00;
Nov. 2023 "Landlord's Five Days Notice" for $4,493.54;
Dec. 2023 "Landlord's Five Days Notice" for $6,135.43;
Feb. 2024 "Notice of Termination of Tenancy" to end June 30, 2024;

Mar. 2024 "invasion of privacy" by "wrongful entry" into apartment;
July 2024 "Demand" to "Self Evict" and for apartment keys;
July 2024 "Stopped" accepting rent;
Aug. 2024 "Landlord's Five Days Notice" for $911.39.

8. United States gave its homeless Veteran a United States Department of Housing and Urban Development-United States Department of Veterans Affairs Supportive Housing (hereafter "HUD-VASH") voucher for his service as a Veteran of the U.S. Armed Forces.

9. The voucher is managed by the Chicago Housing Authority (hereafter "CHA").

10. 6807 N. Sheridan Property Owners LLC., Spirit Management Services, LLC. and Ms. Nakeshia Thompson, alleged Donaldson's HUD-VASH voucher had expired to force an eviction, but CHA averred Donaldson's voucher had never expired.

11. 6807 N. Sheridan Property Owners LLC., Spirit Management Services, LLC. and Ms. Nakeshia Thompson, thanked Donaldson for his service with 3-invasions of privacy and 4-eviction notices within one (1) year, conversely, Green Village and Sarah thanked him for his service by accepting his HUD-VASH voucher and housed a homeless Veteran, and in five (5 ) years never invaded Donaldson's privacy or served him with a "Landlord's Five Days Notice".

## THE PARTIES

12. PEDRO DONALDSON is the Plaintiff, *pro se.* At all times relevant was a legal resident of the City of Chicago, in Cook County, Illinois.

13. 6807 N. SHERIDAN PROPERTY OWNERS, LLC, (hereafter "New Owners") is a Co-Defendant and owner of Vivian Apartments. At all times relevant was the employer of "Spirit Management Services, LLC.," and/or Ms. Nakeshia Thompson. Vivian Apartments has 160 rental units and is located at 6807 N. Sheridan Road, Chicago, Illinois 60626.

14. SPIRIT MANAGEMENT SERVICES, LLC, (hereafter "New Management") is a

2

Co-Defendant. At all times relevant was an employee of "6807 N. Sheridan Property Owners LLC." At all times relevant was acting within the scope of its employment.

15. NAKESHIA THOMPSON (hereafter "Ms. Thompson") is a Co-Defendant. At all times relevant was an employee of "Spirit Management Services, LLC." and/or "6807 N. Sheridan Property Owners LLC." At all times relevant was acting within the scope of her employment as an on-site manager and Landlord's agent.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the plaintiff's claim of violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000 and 42 U.S.C. § 1981, (hereafter "Section 1981").

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal question regarding the deprivation of the plaintiff's rights under Section 1981.

18. This Court has supplemental subject matter jurisdiction related state law pursuant to 28 U.S.C. § 1367(a)

19. Venue is proper as the events that gave rise to this Complaint occurred in this District. 42 U.S.C. § 2000e-5(f)(3).

## PRELIMINARY STATEMENT

20. In November 2019, Donaldson signed a lease with the Vivian Apartments for Apartment #202. His lease was renewed for the years: 2020; 2021; 2022, and; 2023.

21. The lease dates fluctuated from time to time, and Donaldson may have signed a lease with Vivian Apartments in June.

3

22.     On or about July 2023, the Vivian Apartments was sold to "New Owners", and "New Management" became the new management service, and "Ms. Thompson" became the new on site manager and Landlord's agent.

23.     Donaldson alleges unequal treatment based on: 1) his race black; 2) his age as a senior citizen in his 60's; 3) his sex male, and; 3) his for service as a Veteran of the United States Armed Forces, with a HUD-VASH subsidy.

### ALLEGATIONS COMMON TO ALL COUNTS

24.     On or about Wednesday, August 9, 2023, Donaldson went downstairs from his apartment to the front office, and made a repair appointment to unclog his bathtub with New Management employee, Mr. Hunter, set for 9:00 am - 12:00 pm.

25.     On or about Friday, August 11, 2023, Donaldson waited until 11:00 am, and decided to confirm the appointment. Mr. Hunter told him maintenance was busy, and asked if he would mind if maintenance made repairs when he was not home, and Donaldson replied that he did not want anyone in his apartment when he is not home.

26.     Donaldson told Mr. Hunter that he would come back next week, and make another appointment so he could remain in his apartment it the morning from 9:00 am-12:00 pm, while maintenance unclogged his bathtub.

27.     On or about Tuesday, August 15, 2023, a Black Maintenance man entered Donaldson's apartment without his consent while he was asleep naked.

28.     Donaldson rushed to the door and asked the Maintenance man who he was, and did he want.

29.     The maintenance man replied that he had knocked three times before he opened

4

the door, and that he was there to repair the clogged bathtub.

30.     Donaldson put on some clothes and told the Maintenance man he had made an appointment last week he waited until 11:00 am., and that no one showed up. And that he did not make a second appointment with Hunter.

31.     The maintenance man asked Donaldson if the bathtub clog had repaired itself, and that since he was home, he should let him make repairs, but Donaldson told him to come back after he made another appointment with Hunter.

32.     Donaldson decided to go downstairs to complain to Mr. Hunter, but as he was going downstairs, he heard a door slam (surveillance camera), and after he reached the bottom and walked toward the front office, he saw that the front office door was closed.

33.     Donaldson decided to let Mr. Eric Swiecki, his social worker from the Jesse Brown Veterans Administration (hereafter "VA") speak with Mr. Hunter, but when VA Swiecki called the Vivian Apartments to speak with Mr. Hunter, no one picked up the phone.

34.     On or about August, 22, 2023, a week later, two (2) Black Maintenance men entered Donaldson's apartment without his consent, and the same thing happened again.

35.     Donaldson asked the two Maintenance men who they were and what they wanted.

36.     They said that they were maintenance, and were there to unclogged the bathtub.

37.     Donaldson told the 2-Maintenance man that he had not made appointment, and an argument ensued, the maintenance men walking away and one said: "this is bull s_ _ t."

38.     Donaldson went to complain to Mr. Hunter, but as he was going downstairs, he heard a door slam again, and as he walked towards the front office the door was closed.

39.     Donaldson asked VA Swiecki to speak with Mr. Hunter, but when VA Swiecki

5

called the Vivian Apartments to speak with Mr. Hunter, no one picked up the phone.

40. Donaldson installed a chain on his door to prevent maintenance from entering his apartment without his consent, while he walked around his apartment naked.

41. Donaldson has not taken a bath or a shower in his apartment for a year, because maintenance has not fixed the drain in his bathtub.

42. On October 10, 2023, New Owners and New Management served Donaldson a "Landlord's Ten Days Notice" for $3,112.00. A copy notice is attached as **EXHIBIT A.**

43. Donaldson's portion of the rent is $194.00 per month, or $2,328.00 a year, and he did not go a month without paying his rent, let alone a year.

44. On or about October 10, 2023, Donaldson asked VA Swiecki for assistance.

45. VA Swiecki had an inkling the arrears were caused by a change of ownership, and began an inquiry with New Management and Mr. Reed, a CHA employee.

46. On November 7, 2023, New Owners and New Management questioned the validity of Donaldson's HUD-VASH voucher.

47. On November 8, 2023, New Owners and New Management served Donaldson a "Landlord's Five Days Notice" for $4,493.54. A copy of which is attached as **EXHIBIT B.**

48. On November 9, 2023, CHA told Mr. Swiecki that the issue was between New Owners and New Management, and not Donaldson's HUD-VASH voucher.

49. On or about November 28, 2023, Ms. Thompson, together with her secretary, knocked on Donaldson's apartment door regarding his two eviction notices.

50. Donaldson asked Ms. Thompson if he could meet her in her office and she agreed.

51. Donaldson and Ms. Thompson met in her office shorty thereafter, and she told

him he was in arrears because his voucher had expired, and that he owed back rent in the amount of $4,493.54.

52. On November 29, 2023, Donaldson asked Iraq War Veteran, Purple Heart recipient, United States Senator, and former Assistant Secretary of the United States Department of Veterans Affairs, Senator Tammy Duckworth, to assist him with his eviction notices for CHA's non-payment of rent from HUD-VASH. A copy of which is attached as **EXHIBIT C.**

53. On November 29, 2023, Donaldson also protested to CHA about his eviction for non-payment of rent from HUD-VASH. A copy of which is attached as **EXHIBIT D.**

54. On December 11, 2023, CHA told Senator Duckworth's Office the issue was a recent change of ownership. A copy of which is attached as **EXHIBIT E.**

55. On December 11, 2023, Ms. Thompson served Donaldson a third (3rd) notice, a "Landlord's Five Days Notice" for $6,135.43. A copy of which is attached as **EXHIBIT F.**

56. On January 3, 2024, CHA gave Donaldson a $6,135.43 receipt, with continued future subsidy payments until September 2025. A copy of which is attached as **EXHIBIT G.**

57. On January 3, 2024, Donaldson asked CHA Reed to phone Ms. Thompson, and on speaker phone Ms. Thompson admitted the $6,135.43 back-rent was in New Owner's system, but refused to clear Donaldson's because it was not in her system, and the next month served Donaldson a "Termination of Tenancy".

58. On February 16, 2024, Ms. Thompson served Donaldson a fourth (4th) notice, a "Notice of Non-Renewal and Termination of Tenancy" to end June 30, 2024. A copy of which is attached as **EXHIBIT H.**

59. On March 25, 2023, Ms. Thompson entered his apartment without his consent,

and when she saw the chain on his door, she cited Donaldson for a lease violation. **EXHIBIT I.**

60.     In July 2024, Ms. Thompson asked Mr. Donaldson to "self evict," and to give her the keys to his apartment. Donaldson told her to take him to court.

61.     In July 2024, Ms. Thompson stopped accepting rent, and the envelope with Donaldson's rent came back: "Return to Sender". A copy of which is attached as **EXHIBIT J.**

62.     On August 17, 2024, Ms. Thompson served Donaldson with a fifth (5th) notice, a "Landlord's Five Days Notice" for $911.39. A copy of which is attached as **EXHIBIT K.**

## COUNT I
### Invasion of Privacy a Violation of the Fourth Amendment

63.     Plaintiff realleges and incorporates paragraphs ¶'s 1-62 as ¶ 63 of this count.

64.     On or about August, 15, 2023, Mr. Hunter sent a Black Maintenance man to Donaldson's apartment without his consent to unclog his bathtub, he was asleep naked. Mr. Hunter and Maintenance invaded Donaldson's private "space," for solitude or secrecy, that the Fourth Amendment to the United States Constitution protects.

65.     But for Maintenance entering Donaldson's apartment without his consent while he was asleep naked, after he told Mr. Hunter he would make an appointment, and he did not want anyone in his apartment when he is not home, Donaldson would not have suffered damages.

66.     By the actions detailed above, among others, Mr. Hunter and Maintenance intentionally invaded Donaldson's privacy in violation of the Fourth Amendment by, among other things, entering his apartment without his consent while he was asleep naked, after he told Mr. Hunter he would make an appointment, and he did not want anyone in his apartment when he is not home.

67.     As a direct and proximate result of a Maintenance Man entering his apartment

without his consent while he was asleep naked, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages, for which he is entitled to an award of damages.

68. Defendants' unlawful acts and invasion of privacy constitute malicious, willful and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

**COUNT II**
**Invasion of Privacy a Violation of the Fourth Amendment**

69. Plaintiff realleges and incorporates ¶'s 1-68 as ¶ 69 of this count.

70. On or about August, 22, 2023, Mr. Hunter sent 2-Black Maintenance men to Donaldson's apartment without his consent to unclog his bathtub. Mr. Hunter and Maintenance invaded Donaldson's private "space," for solitude or secrecy, that the Fourth Amendment to the United States Constitution protects.

71. But for Maintenance entering Donaldson's apartment without his consent for a second time, after he told Mr. Hunter he would make an appointment, and he did not want anyone in his apartment when he is not home, Donaldson would not have suffered damages.

72. By the actions detailed above, among others, Mr. Hunter and two Maintenance Men intentionally invaded Donaldson's privacy in violation of the Fourth Amendment by, among other things, entering his apartment without his consent, after Donaldson told Mr. Hunter he would make an appointment, and he did not want anyone in his apartment when he is not home, among other things, entering his apartment without his consent a second time, among other things, creating a pattern of entering his apartment without his consent twice in one week.

73. As a direct and proximate result of 2-Maintenance Men entering his apartment

without his consent for a second time, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages, for which he is entitled to an award of damages.

74. Defendants' unlawful acts and invasion of privacy constitute malicious, willful and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

**COUNT III**
**Discriminatory Conduct in Violation of Section 1981**

75. Plaintiff realleges and incorporates ¶'s 1-74 as ¶ 1-75 of this count.

76. On October 10, 2023, New Owners & New Management served Donaldson with a "Landlord's Ten Days Notice" for $3,112.00 non-payment of rent from CHA. (exhibit A).

77. In October 2023, New Owners & New Management served Section-8 tenants a "Landlord's Ten Days Notice" for non-payment of rent from CHA.

78. By November 8, 2023, New Owners & New Management had resolved Section-8 subsidies, but not Donaldson's HUD-VASH subsidy.

79. On November 8, 2023, New Owners & New Management served Donaldson a "Landlord's Five Days Notice" for $4,493.54 non-payment of rent from CHA. (exhibit B).

80. Section-8 tenants and HUD-VASH tenant are similarly situated CHA customers, New Owners & New Management had resolve Section-8 subsidies and stop serving them with eviction notices, conversely, New Owners & New Management did not resolve Donaldson's HUD-VASH subsidy and served him a second "Landlord's Five Days Notice" for $4,493.54.

81. But for New Owners & New Management's unlawful and discriminatory action, Donaldson would not have suffered damages, and he would have continued to enjoy his tenancy

like from 2019-2023 with Green Village and Sarah.

82.     By the actions detailed above, among others, New Owners & New Management intentionally discriminated against Donaldson in violation of section 1981 by, among other things, denying him equal terms and conditions of contract by resolving Section-8 subsidies, but not Donaldson's HUD-VASH subsidy, among others things, stopped issuing Section-8 eviction notices, while serving Mr. Donaldson a second (2nd) "Landlord's Five Days Notice". Any stated reason for New Owners & New Management's conduct are not the true reasons, but instead are a pretext to hide New Owners and New Management's racist animus.

83.     As a direct and proximate result of New Owners & New Management's unlawful and discriminatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages, including the threat of becoming homeless again for not paying a $4,493.54 debt that he never owed, for which he is entitled to an award of damages.

84.     New Owners & New Management's unlawful and discriminatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT IV
### Discriminatory Conduct in Violation of Section 1981

85.     Plaintiff realleges and incorporates ¶'s 1-84 as ¶ 1-85 of this count.

86.     On or about November 28, 2023, Ms. Thompson, together with her secretary, knocked on Donaldson's apartment door regarding his two eviction notices.

87.     On December 11, 2023, Ms. Thompson served Mr. Donaldson with a third (3rd) "Landlord's Five Days Notice", and this time for $6,135.43 non-payment of rent from CHA. .

11

88.     New Owners & New Management had resolved Section-8 subsidies in November, but New Owners & Ms. Thompson served Donaldson a third (3rd) eviction notice in December.

89.     Section-8 tenants and HUD-VASH tenant are similarly situated CHA customers, New Owners & New Management resolved Section-8 subsidies and stopped eviction notices, conversely, New Owners & Ms. Thompson did not resolve the HUD-VASH subsidy, and served Donaldson a third (3rd) "Landlord's Five Days Notice" for $6,135.43.

90.     But for New Owners and Ms. Thompson's unlawful and discriminatory action, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy like from 2019-2023 with Green Village and Sarah.

91.     By the actions detailed above, among others, New Owners & Ms. Thompson intentionally discriminated against Donaldson in violation of section 1981 by, among other things, denying him equal terms and conditions of contract by resolving Section-8 subsidies, but not Donaldson's HUD-VASH subsidy, among others things, stopped issuing Section-8 eviction notices, while serving Donaldson a third (3rd) "Landlord's Five Days Notice". Any stated reason for New Owners & Ms. Thompson conduct are not the true reasons, but instead are a pretext to hide New Owners & Ms. Thompson's racist animus.

92.     As a direct and proximate result of New Owners and Ms. Thompson's unlawful and discriminatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages, including the threat of becoming homeless again for not paying a $6,135.43 debt that he never owed, for which he is entitled to an award of damages.

93.     New Owners and Ms. Thompson's unlawful and discriminatory actions constitute

malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT V
### Civil Conspiracy to Unlawfully Evict Donaldson
### Donaldson v. New Owners, New Management and Ms. Thompson

94.    Plaintiff realleges and incorporates ¶'s 1-93 as ¶ 1-94 of this count.

95.    On or about Tuesday, August 15, 2023, Mr. Hunter sent maintenance to Donaldson's apartment to unclog his bathtub without his consent while he was asleep naked,  and a week later on or about Tuesday, August, 22, 2023, Mr. Hunter sent maintenance to Donaldson's apartment to unclog his bathtub without his consent, both times, after he told Mr. Hunter he would make an appointment, and he did not want anyone in his apartment when he is not home, and an argument ensued.

96.    As a result of Mr. Hunter sending maintenance to Donaldson's apartment without his consent, the bathtub remains unclogged which is a form of constructive eviction.

97.    On October 10, 2023, New Owners and New Management served Donaldson with a "Landlord's Ten Days Notice" for $3,112.00. Please see exhibit A.

98.    On November 7, 2023, the New Owners and New Management questioned the validity of Donaldson's voucher. VA Swiecki's email states in pertinent part as follows:

> We spoke with CHA and they stopped making payments for him in August. Not sure if the voucher has expired, but the current balance due is $4,491.59.
>                     A copy of which is attached as **EXHIBIT L.**

99.    On November 8, 2023, New Owners and New Management served Donaldson a "Landlord's Five Days Notice" for $4,493.54.

100.    On November 9, 2023, New Management told Mr. Swiecki the issue had been

13

resolved for section-8 tenants, but questioned the validity of Donaldson's HUD-VASH voucher. VA Swiecki's email states in pertinent part as follows:

> That issue was resolved a while ago and we have received payments for all our other residents from CHA except Mr. Donaldson. They told me it has to do with the voucher.
>
> Pease see exhibit L.

101. On November 9, 2023, CHA told VA Swiecki the issue was between New Owners and New Management, and not Donaldson's HUD-VASH voucher. VA Swiecki's email states in pertinent part as follows:

> CHA told us that the issue isn't with Mr. Donaldson's voucher, and that it is a matter for property management to discuss with Owner Services.
>
> Pease see exhibit L.

102. On November 9, 2023, New Management told VA Swiecki that the issue was the change-of-ownership.

> We're on the phone with them rings now, they're insistent that the hold is because paperwork proving change-of-ownership has not been processed.
>
> Pease see exhibit L.

103. On December 11, 2023, CHA replied to Senator Duckworth's Office by email and stated that CHA had stopped payments because of a change of ownership.

> Our team had a chance to look into this and it looks like there was a recent change of ownership at the property and the owner's payments had been halted because of this change of ownership.
>
> Pease see exhibit L.

104. On January 3, 2024, Donaldson asked CHA Reed to phone Ms. Thompson on speaker phone, and Ms. Thompson admitted $6,135.43 back-rent was in New Owner's system, but refused to clear Donaldson's because it was not in her system.

105. On January 3, 2024, CHA gave Donaldson a receipt for $6,135.43. The receipt includes future payments for 1-year and 9-months, or until September, 2025.

106. On January 3, 2024, Ms. Thompson was fully aware a change of ownership was the proximate and direct cause for the non payment of rent, but Ms. Thompson refused to clear Donaldson's $6,135.43 non-payment of rent from CHA.

107. Acting in the furtherance of their plan and conspiracy to evict Donaldson, New Owners, New Management & Ms. Thompson committed overt acts, among other things, constructive eviction by not fixing his bathtub, among other things, resolving Section-8 subsidies but not Donaldson's subsidy, among other things, blaming Donaldson's HUD-VASH voucher for non-payment of rent, after CHA team, VA Swiecki, and CHA Reed told them the change-of-ownership was the issue, among other things, refusing to clear Donaldson because back payment was not in Ms. Thompson's system.

108. New Owners, New Management & Ms. Thompson by and through its agents and/or employees reached an understanding, engaged in a sequence of events or course of conduct, and otherwise, agreed and conspired together to violate Donaldson's Constitutional Rights.

109. Each Defendant reached this understanding, and agreement, and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Donaldson of his right to due process guaranteed by the Fourteenth Amendment to the U.S. Constitution.

110. Said conspiracy/joint action violated Donaldson's `Constitutional Rights in contravention of the U.S. Constitution.

15

111. Defendants' course of conduct was done willfully, maliciously, and intentionally, or done with reckless indifference to Donaldson's Constitutional Rights.

112. As a direct and proximate cause of the above described wrongful infringement of Donaldson's Constitutional rights, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

113. New Owners and Ms. Thompson's unlawful and discriminatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages

## COUNT VI
### Intentional Infliction of Emotional Distress
### Donaldson v. New Owners, New Management and Ms. Thompson

114. Plaintiff realleges and incorporates ¶'s 1-113 as ¶ 1-114 of this count.

115. Defendants said Donaldson's HUD-VASH voucher was the issue for his arrears, while being fully aware "paperwork proving change-of-ownership has not been processed" was the issue.

**The Issue was Donaldson's HUD-VASH Voucher**

116. October 10, 2023, Defendants served Donaldson a $3,112.00 eviction notice.

117. November 7, 2023, Defendants blamed Donaldson's HUD-VASH voucher.

118. November 8, 2023, Defendants served Donaldson a $4,493.54 eviction notice.

119. November 9, 2023, Defendants resolved Section-8 but not HUD-VASH vouchers.

120. December 11, 2023, Defendants served Donaldson a $6,135.43 eviction notice.

**The Issue was Owner-Management Incompetence**

121. November 9, 2023, CHA team stated the issue was Owner-Management.

122. November 9, 2023, VA Swiecki stated the issue was Owner-Management.

123. December 11, 2023, Sen. Duckworth knew the issue was Owner-Management.

124. January 3, 2024, CHA Reed stated the issue was Owner-Management.

125. January 3, 2024, Ms. Thompson stated the issue was Owner-Management.

126. The actions of Defendants, as set forth above, were extreme and outrageous, and Defendants either intended to inflict severe emotional distress upon Donaldson, or knew or should have known that their conduct would in fact inflict severe emotional distress.

127. But for Defendants' unlawful and discriminatory action, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy at Vivian Apartments until September 2025.

128. As a direct and proximate cause of the above described wrongful infringement of Donaldson's Constitutional rights, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

## COUNT VII
### Discriminatory Conduct in Violation of Section 1981

129. Plaintiff realleges and incorporates ¶'s 1-128 as ¶ 129 of this count.

130. On January 30, 2004, New Owners & Ms. Thompson offered Sandy, an early bird "Renewal of Tenancy" to begin April 29, 2024. A copy of which is attached as **EXHIBIT M.**

131. On February 16, 2024, New Owners and Ms. Thompson served Donaldson a "Notice of Non-Renewal and Termination of Tenancy" to end June 30, 2024.

132. Ms. Sandy is an attractive, young, single white female, who lives in apartment

17

#204, next door to Donaldson, and she pays her rent at a "market rate" value.

133. Mr. Donaldson is a bald and grey African-American male, who lives in apartment #202, next door to Sandy, and he pays most of his rent with a HUD VASH subsidy.

134. Sandy and Donaldson are similarly situated and pay their rent on time, but: one is young and one is old; one pays "market rate" rent and one has a subsidy; one is White and one is Black; one is offered renewal of tenancy and one is served a termination of tenancy.

135. The young White "market rate" tenant was offered a renewal of tenancy, conversely, the old Black subsidized tenant was given a termination of tenancy. Donaldson alleges unequal treatment based on race, age, and service to his country.

136. But for New Owners & Ms. Thompson's unlawful and discriminatory action, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy at Vivian Apartments until September 2025.

137. By the actions detailed above, among others, the Defendants have intentionally discriminated against Donaldson in violation of section 1981 by, among other things, denying him equal terms and conditions of contract offered to a young White "market rate" tenant by renewing her tenancy, while terminating the tenancy of the old Black HUD-VASH tenant. Any stated reason for the Defendants conduct are not the true reasons, but instead are a pretext to hide the Defendants' racist animus.

138. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

18

139. Defendants' unlawful and discriminatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT VIII
### Retaliation and
### Discriminatory Conduct in Violation of Section 1981

140. Plaintiff realleges and incorporates ¶'s 1-139 as ¶ 140 of this count.

141. On February 16, 2024, Ms. Thompson served Donaldson a fourth (4th) notice, a "Notice of Non-Renewal and Termination of Tenancy" to end June 2024.

142. New Owners & Ms. Thompson "Termination of Tenancy" is a retaliatory action against Donaldson for prior protected activity, which are as follows:

### Retaliation

| | |
|---|---|
| ~Aug. 17, 2023 | protest to VA Swiecki - Donaldson's "invasion of privacy"; |
| ~Aug. 22, 2023 | protest to VA Swiecki - Donaldson's "invasion of privacy"; |
| Oct. 10, 2023 | protest to VA Swiecki - Donaldson's $3,112.00 eviction notice; |
| Nov. 7, 2023 | protest to VA Swiecki - Donaldson's $4,493.54 eviction notice; |
| Nov. 29, 2023 | protest to Sen Duckworth - Donaldson's HUD-VASH voucher; |
| Nov. 29, 2023 | protest to CHA team - Donaldson's HUD-VASH voucher; |
| Dec. 11, 2023 | protest to CHA Reed - Donaldson's $6,135.43 "eviction notice; |
| Jan. 3, 2024 | protest to CHA Reed - Donaldson's HUD-VASH voucher. |

143. But for Defendants' unlawful, discriminatory and retaliatory action, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy at the Vivian Apartments until September 2025.

144. By the actions detailed above, among others, the Defendants have intentionally retaliated and discriminated against Donaldson in violation of section 1981 by, among other things, denying him equal terms and conditions of contract offered to a young White "market rate" tenant by renewing her tenancy, while terminating the tenancy of the old Black HUD-

VASH tenant, among other things, a pattern of unlawful retaliation based on prior protected activity. Any stated reason for the Defendants conduct are not the true reasons, but instead are a pretext to hide the Defendants' racist animus.

145. As a direct and proximate result of the Defendants' unlawful, discriminatory and retaliatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

146. Defendants' unlawful, discriminatory and retaliatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT IX
### Invasion of Privacy
### in Violation of the Fourth Amendment

147. Plaintiff realleges and incorporates paragraphs ¶'s 1-146 as ¶ 147 of this count.

148. On March 25, 2023, Ms. Thompson entered Donaldson's apartment without his consent. Ms. Thompson invaded Donaldson's private "space," for solitude or secrecy, that the Fourth Amendment to the United States Constitution protects.

149. But for Ms. Thompson entering his apartment without his consent, Donaldson would not have suffered invasion of privacy under the Fourth Amendment.

150. By the actions detailed above, among others, Ms. Thompson intentionally invaded Donaldson's privacy in violation of the Fourth Amendment by, among other things, entering his apartment without his consent, among other things, entering his apartment without his consent for a third (3rd) time, among other things, continuing a pattern of entering his apartment without

his consent. Any stated reason for Ms. Thompson's conduct are not the true reasons, but instead are a pretext to hide Ms. Thompson's animus.

151. As a direct and proximate result of Ms. Thompson's unlawful invasion of privacy in violation of the Fourth Amendment, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

152. Defendants' unlawful acts and invasion of privacy constitute malicious, willful and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT X
### Retaliation and
### Discriminatory Conduct in Violation of Section 1981

153. Plaintiff realleges and incorporates paragraphs ¶'s 1-152 as ¶ 153 of this count.

154. In July 2024, Ms. Thompson asked Donaldson for the keys to his apartment, to self-evict, and stopped accepting Donaldson's rent, and his envelope with his rent came back as "Return to Sender".

155. Ms. Thompson is not obligated to renew Donaldson's lease unless it is for cause, and the cause is a pattern of unlawful retaliation based on prior protected activity listed below:

Retaliation

| | |
|---|---|
| ~Aug. 17, 2023 | protest to VA Swiecki - Defendant's "invasion of privacy"; |
| ~Aug. 22, 2023 | protest to VA Swiecki - Defendant's "invasion of privacy"; |
| Oct. 10, 2023 | protest to VA Swiecki - Defendant's $3,112.00 eviction notice; |
| Nov. 7, 2023 | protest to VA Swiecki - Defendant's $4,493.54 eviction notice; |
| Nov. 29, 2023 | protest to Sen Duckworth - Donaldson's HUD-VASH voucher; |
| Nov. 29, 2023 | protest to CHA team - Donaldson's HUD-VASH voucher; |
| Dec. 11, 2023 | protest to CHA Reed - Defendant's $6,135.43 "eviction notice; |
| Jan. 3, 2024 | protest to CHA Reed - Donaldson's HUD-VASH voucher. |

21

Jan. 30, 2004     protest to VA Swiecki - Sandy's Renewal of Tenancy;
Feb. 16, 2024     protest to VA Swiecki - Defendant's Termination of Tenancy;
Mar. 25, 2023     protest to VA Swiecki - Defendant's "invasion of privacy".

156. But for Defendant's unlawful, retaliatory and discriminatory action, Donaldson would not have suffered damages, including the threat of becoming homeless and returning to living on the Blue line "L" train.

157. But for New Owners and Ms. Thompson's unlawful, retaliatory and discriminatory, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy until September 2025, as stated in Donaldson's HUD-VASH receipt from CHA.

158. By the actions detailed above, among others, Defendants' have intentionally retaliated and discriminated against Donaldson in violation of section 1981 by, among other things, not asking Section-8 and the White tenant for their keys and to "self-evict", while serving Donaldson a fifth (5th) eviction notice, among other things, continuing a pattern of unlawful retaliation based on prior protected activity. Any stated reason for the Defendants conduct are not the true reasons, but instead are a pretext to hide the Defendants' racist animus.

159. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

160. Defendants' unlawful, retaliatory and discriminatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

## COUNT XI
### Retaliation and
### Discriminatory Conduct in Violation of Section 1981

161. Plaintiff realleges and incorporates paragraphs ¶'s 1-160 as ¶ 161 of this count.

162. On August 17, 2024 New Owners and Ms. Thompson served Donaldson a "Landlord's Five Days Notice" for $911.39.

163. Defendants' fourth (4th) "Landlord's Five Days Notice" for $911.39. is a continued retaliatory action against Donaldson for prior protected activity, which are as follows:

### Retaliation

| | |
|---|---|
| ~Aug. 17, 2023 | protest to VA Swiecki - Defendant's "invasion of privacy"; |
| ~Aug. 22, 2023 | protest to VA Swiecki - Defendant's "invasion of privacy"; |
| Oct. 10, 2023 | protest to VA Swiecki - Defendant's $3,112.00 eviction notice; |
| Nov. 7, 2023 | protest to VA Swiecki - Defendant's $4,493.54 eviction notice; |
| Nov. 29, 2023 | protest to Sen Duckworth - Donaldson's HUD-VASH voucher; |
| Nov. 29, 2023 | protest to CHA team - Donaldson's HUD-VASH voucher; |
| Dec. 11, 2023 | protest to CHA Reed - Defendant's $6,135.43 "eviction notice; |
| Jan. 3, 2024 | protest to CHA Reed - Donaldson's HUD-VASH voucher. |
| Jan. 30, 2004 | protest to VA Swiecki - Sandy's Renewal of Tenancy; |
| Feb. 16, 2024 | protest to VA Swiecki - Defendant's Termination of Tenancy; |
| Mar. 25, 2023 | protest to VA Swiecki - Defendant's "invasion of privacy"; |
| ~July 2024 | protest to VA Swiecki - Ms. Thompson Demand for keys; |
| ~July 2024 | protest to VA Swiecki - Ms. Thompson stopped accepting rent. |

164. Donaldson's portion of rent is $194.00, and $911.39 is more than 4-months of non payment of rent. Donaldson did not go a month without paying his rent, let alone 4-months.

165. Defendants have not come up with a reason to evict Donaldson, so they stopped accepting his rent in order to make Donaldson's rent balloon to $911.39.

166. Defendants advertise apartments for rent on the sidewalk, and offer tenant a $500.00 credit in rent for referrals that end in filling vacant apartments, but ask Donaldson for his keys and stop accepting his rent.

167. Donaldson was living on the Blue line "L" train in 2019, and will most likely

return to living on the Blue line "L" train if he is evicted.

168.    Donaldson wants to shine a light on black-on-black crime that was recently displayed on the Blue line "L" train on September 2, 2024, where four passengers were shot to death while sleeping on the train by a Black Man, Rhanni Davis.

169.    Sarah is a White woman and may be a descendent of slave owners, Donaldson is a Black man who is likely a descendant of slaves. Ms. Thompson is a Black woman who is likely a descendant of slaves. And yet, the White woman treats the Black man humanely, while the Black woman suppresses the Black man, hence, black on black racism.

170.    Donaldson also wants to shine a light on black-on-black racism that was recently displayed in a Memphis Court, where five Black Police Officers were charged with Civil Rights Violations for beating a Black Man to death, Tyre Nichols.

171.    But for New Owners and Ms. Thompson's unlawful and discriminatory action, Donaldson would not have suffered damages, and would have continued to enjoy his tenancy until September 2025, as stated in Donaldson's HUD-VASH receipt from CHA.

172.    By the actions detailed above, among others, Ms. Thompson intentionally retaliated and discriminated against Donaldson in violation of section 1981 by, among other things, not accepting his rent for his rent in order to balloon it to $911.39 to establish a cause for eviction, among other things, advertising apartment for rent, while asking Donaldson for his keys and stop accepting his rent, among other things, continuing a pattern of unlawful retaliation based on prior protected activity. Any stated reason for Defendants' conduct is not the true reasons, but instead are a pretext to hide Ms. Thompson's racist animus.

173.    As a direct and proximate result of the Defendants' unlawful, retaliatory and

24

discriminatory conduct in violation of section 1981, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

174.    Defendants' unlawful, retaliatory and discriminatory actions constitute malicious, willful, and wonton violations of Section 1981, for which Donaldson is entitled to an award of punitive damages.

WHEREFORE, Plaintiff prays this Honorable Court for judgement judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including pecuniary damages, severe emotional pain and suffering, loss of normal life, mental anguish and emotional distress and damages.

## JURY DEMAND

175.    Plaintiff demands a trial by jury on all such claims that may be so tried.

Respectfully Submitted,

By:    _____
       Pedro Donaldson, Plaintiff

Pedro Donaldson.
The Plaintiff, *pro se*
Post Office Box 408594
Chicago, Illinois 60640-0016
No phone

## LANDLORD'S TEN (10) DAY NOTICE

TO: _Pedro Donaldson_____ and All Unknown Occupants

6807 N Sheridan Road, # 202
Chicago, IL 60626

**YOU ARE HEREBY NOTIFIED** that there is now due to the undersigned landlord the sum of _three thousand one hundred twel-___ DOLLARS AND ___/100 CENTS ($[ 3 112. 79 ]) being rent for the leased premises situated in the County of Cook and State of Illinois, described as follows, to wit:

**6807 N Sheridan Road, # 202
Chicago, IL 60626**

together with all buildings, closets, storage areas, recreational facilities, parking spaces, and garages used in connection with said premises.

**YOU ARE FURTHER HEREBY NOTIFIED** that payment of said sum so due has been and is hereby demanded of you, in **certified funds, cashier's check or money order** and that unless payment thereof is made on or before the expiration of ten (10) days after service of this notice your right to possession to said premises will be terminated.

**ONLY FULL PAYMENT** of the rent demanded in this notice will waive the landlord's right to terminate your possession of the leased premises under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT: Darshaya Oden is hereby authorized to receive said rent for the undersigned.

**Send Payment to:**
**6807 N SHERIDAN PROPERTY OWNER, LLC**
6807 N Sheridan Road
Chicago, IL 60626

Dated: _October 10_____, 2023

By: _____
LANDLORD/LANDLORD'S AGENT

---

### AFFIDAVIT OF SERVICE

Darshay Oden, being duly sworn, on oath deposes and says that on the _10th_ day of _October___, 2023 s/he served the within notice on the tenant named therein, as follows: *

1) by delivering a copy thereof to the within named tenant, _Pedro Donaldson__.

2) by delivering a copy thereof to _____, a person above the age of thirteen years, residing on or in charge of the within described premises.

3) by sending a copy thereof to said tenant by** certified/registered mail, with request for return of receipt from the addressee.

4) by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

### VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that she/he verily believes the same to be true.

_____

* Strike out all paragraphs not applicable.
** Strike out word not applicable.

**EXHIBIT A**

iManage\KE003\50100\5027978.v1-12/3/21

## LANDLORD'S FIVE (5) DAY NOTICE

TO: *Pedro Donaldson* _____ and All Unknown Occupants

6807 N. Sheridan Rd. Unit *202*
Chicago, IL 60626

**YOU ARE HEREBY NOTIFIED** that there is now due to the undersigned landlord the sum of *four thousand four hundred ninety one* _____ **DOLLARS AND** *91*/ 100 CENTS ($[ *4,491.59*]) being rent for the leased premises situated in the County of Cook and State of Illinois, described as follows, to wit:

**6807 N. Sheridan Rd. Unit *202***
**Chicago, IL 60626**

together with all buildings, closets, storage areas, recreational facilities, parking spaces, and garages used in connection with said premises.

**YOU ARE FURTHER HEREBY NOTIFIED** that payment of said sum so due has been and is hereby demanded of you, in certified funds, cashier's check or money order and that unless payment thereof is made on or before the expiration of five (5) days after service of this notice your right to possession to said premises will be terminated.

**ONLY FULL PAYMENT** of the rent demanded in this notice will waive the landlord's right to terminate your possession of the leased premises under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT: Darshaya Oden is hereby author       ive said rent for the undersigned.

**Send Payment to:**
**6807 N SHERIDAN PROPERTY OWNER**
6807 N Sheridan Road
Chicago, IL 60626

Dated:_November 8, 2023

By: _____
       LANDLORD/LANDLORD'S AGENT

---

### AFFIDAVIT OF SERVICE

*Darshaya Oden* _____, being duly sworn, on oath deposes and says that on the *8th* day of *November* _____, 2023 s/he served the within notice on the tenant named therein, as follows: *

1) by delivering a copy thereof to the within named tenant, *Pedro Donaldson* .

2) by delivering a copy thereof to _____, a person above the age of thirteen years, residing on or in charge of the within described premises.

3) by sending a copy thereof to said tenant by** certified/registered mail, with request for return of receipt from the addressee.

4) by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

### VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that she/he verily believes the same to be true.

_____

* Strike out all paragraphs not applicable
** Strike out word not applicable.

**EXHIBIT B**

iManage\KE003\50100\5027978.v1-12/3/21



**TAMMY DUCKWORTH**
U S  S E N A T O R   F O R   I L L I N O I S

*The Privacy Act of 1974 prohibits the disclosure of personal information without the individual's written consent. In order for the Senator's office to open a case on your behalf, please complete this form and return it to one of her offices located in Illinois. Please include copies of any relevant documents.*

## Privacy Act Release Form

☐ Veterans or Military  ☐ Social Security or Medicare  ☐ Other (Non-Immigration)

Name: **PEDRO DONALDSON**   Street Address: **850 S. DAMEN**

City/State/Zip: **CHICAGO, IL 60612**   Phone Number: **No PHONE**

Email Address: **No Email**

Do you authorize us to speak with another person about your case such as a spouse or attorney? Yes ☒ No ☐  **N/A**

**ERIC - V.A. SOCIAL WORKER JESSE BRWN**

If Yes: Name: **HUNTER - VIVIAN**   Relationship: **APARTMENTS**   Phone: **872 - 256 - 9612**

Has another Member of Congress been assisting you with this matter? Yes ☐ No ☒

If Yes: Member Name: _____   Date of Contact: _____

Social Security Number: _____   VA Claim Number: _____   Applicant Date of Birth: _____

Military ID Number: _____   Service Branch: _____   Dates of Service: _____

Medicare ID Number: _____

### Briefly Describe Your Request:

**My LANDLORD IS THEATENING ME FOR EVICTION FOR SOMETINA THAT I DID NOT DO, AND I HAVE AN ATTACHED LETTER EXPLAINING WHAT HAPPENED. I AM A VETERAN OF THE U.S. ARMED FORCES AND I AM IN THE HUD-VASH PROGRAM**

*I am aware that provisions of the Privacy Act of 1974 (Public Law 93-579) may prohibit the release of information in covered agency files without any consent. I hereby give my consent for any applicable federal agency (ies) to release such information to the Office of United States Senator Tammy Duckworth and/or members of her staff in connection with my case or claim.*

Signature: *Pedro Donaldsy*   Date: **11-29-23**

Return to:

**Carbondale**
441 E. Willow St.
Carbondale, IL 62901
Fax: 618-351-1551
Carbondalecasework@duckworth.senate.gov

**Springfield**
8 S. Old State Capitol Plaza
Springfield, IL 62701
Fax: 217-528-7043
springfieldcasework@duckworth.senate.gov

**Rock Island**
1823 2nd Ave. Suite 2
Rock Island, IL 61201
Fax: 309-786-1799
Rockislandcasework@duckworth.senate.gov

**Belleville**
23 Public Square Suite 460
Belleville, IL 62220
Fax: 618-235-4011
bellevillecasework@duckworth.senate.gov

**Chicago**
230 S Dearborn St. Suite 3900
Chicago, IL 60604
Fax: 312-583-0374
chicagocasework@duckworth.senate.gov

**EXHIBIT C**

# CHA
## CHICAGO HOUSING AUTHORITY™

**CUSTOMER RECEIPT**

Date: 11/29/23    Housing Specialist or Team: Vash

Name: Pedro Donaldson    Voucher #: +0134624

Head of Household Name (If different than above): _____

Address: 6807 N. Sheridan   City: Chicago   State: IL   ZIP: 60626

Participant Email Address: _____   Phone #: _____

☐ Re-Examination   ☐ Interim   ☐ Move   ☐ Other (specify): _____

This receipt acknowledges that CHA received the following documents for the participant listed above:

_____   _____   _____

_____   _____   _____

Notes:

Landlord is trying to evict tenant and he is providing documents to show that this eviction is illegal and saying that HUD did not pay his rent.

CHA Staff Signature: _J. Phena_    **EXHIBIT D**    Date: 11/29/23

Rev. 08112020, Eff. 08122020, CHA-0027: Customer Receipt

**From:**
**To:** Heindl, Kirsten (Duckworth)
**Cc:**
**Subject:** RE: HUD-VASH Issue
**Date:** Monday, December 11, 2023 12:57:27 PM
**Attachments:** image001.png

Good morning Kirsten,

Our team had a chance to look into this and it looks like there was a recent change of ownership at the property and the owner's payments had been halted because of this change of ownership. All payments from Sept. 2023 – Dec. 2023 will be issued on our upcoming check run scheduled for this Friday.

Thanks and if we can assist w/anything else, please let us know.

Nate



Manager, Government and External Affairs

Chicago Housing Authority | 60 E. Van Buren | Chicago, IL 60605

**CHA**
**CHICAGO HOUSING AUTHORITY'**

Like us on Facebook | Follow us on Twitter
NOTICE: This email message, including any attachments, may contain information that is confidential and/or proprietary. If you are not an intended recipient, please be advised that any review, use, reproduction or distribution of this message is prohibited.



EXHIBIT E

## LANDLORD'S FIVE (5) DAY NOTICE

TO: _Pedro Donaldson_____ and All Unknown Occupants
6807 N Sheridan Rd., Unit ___202___
Chicago, IL 60626

YOU ARE HEREBY NOTIFIED that there is now due to the undersigned landlord the sum of _six thousand one hundred thirty-five_____ DOLLARS AND _43_/100 CENTS ($6,135.43) being rent for the leased premises situated in the County of Cook and State of Illinois, described as follows, to wit:

6807 N Sheridan Rd., Unit ___202___
Chicago, IL 60626

together with all buildings, closets, storage areas, recreational facilities, parking spaces, and garages used in connection with said premises.

YOU ARE FURTHER HEREBY NOTIFIED that payment of said sum so due has been and is hereby demanded of you, in certified funds, cashier's check or money order and that unless payment thereof is made on or before the expiration of five (5) days after service of this notice your right to possession to said premises will be terminated.

ONLY FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate your possession of the leased premises under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.

LANDLORD/AGENT: 6807 N Sheridan Property Owner, LLC is hereby authorized to receive said rent for the undersigned.

Send Payment to:                         Dated: __12_/_11___, 2023
6807 N SHERIDAN PROPERTY OWNER, LLC
6807 N Sheridan Road                      By: ___A. Nauracy_____
Chicago, IL 60626                              LANDLORD/LANDLORD'S AGENT

---

### AFFIDAVIT OF SERVICE

_Ashley Nauracy_____, being duly sworn, on oath deposes and says that on the _11th_ day of _12_____, 2023 s/he served the within notice on the tenant named therein, as follows: *

1) by delivering a copy thereof to the within named tenant, _Pedro Donaldson_

2) by delivering a copy thereof to _____, a person above the age of thirteen years, residing on or in charge of the within described premises.

3) by sending a copy thereof to said tenant by** certified/registered mail, with request for return of receipt from the addressee.

4) by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

### VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that she/he verily believes the same to be true.

* Strike out all paragraphs not applicable.
** Strike out word not applicable.

_A. Nauracy_____

EXHIBIT F        iManage\KE003\50100\5027978.v1-12/3/21

Scanned with CamScanner



**CHA**
CHICAGO HOUSING
AUTHORITY

# CUSTOMER RECEIPT

Date: 1/3/2024    Housing Specialist or Team: Jaz'myne Fort

Name: Pedro Donaldson    Voucher #: TU134624

Head of Household Name (if different than above): _____

Address: 6807 N Sheridan Rd City: Chicago State: IL ZIP: 60626

Participant Email Address: _____    Phone #: _____

☐ Re-Examination    ☐ Interim    ☐ Move    ☒ Other (specify): _____

This receipt acknowledges that CHA received the following documents for the participant listed above:

_____    _____    _____

_____    _____    _____

Notes:
Check on HAP Payment. Landlord has been paid € until 1/24; payments continue until 09/25.

EXHIBIT G

CHA Staff Signature: Jonny Fort    Date: 1/3/24

Rev. 08112020, Eff. 08122020, CHA-0027: Customer Receipt

## NOTICE OF NON-RENEWAL AND TERMINATION OF TENANCY

To:      Pedro Donaldson and All Unknown Occupants
           6807 N. Sheridan Rd. #202
           Chicago, IL 60626

Re:      Termination of Tenancy

**YOU ARE HEREBY NOTIFIED** that your tenancy at the property situated in the County of Cook, State of Illinois, commonly known as 6807 N. Sheridan Rd. #202 Chicago, IL 60626, together with all buildings, storage areas, parking spaces, garages, and recreational spaces used in conjunction with said premises, will be terminated effective June 30, 2024 and you are hereby notified to quit and deliver possession at that time.

DATED this 16 Day of February, 2024.

By:_____
          LANDLORD/LANDLORD'S AGENT

---

### AFFIDAVIT OF SERVICE

Nakeshia Thompson, being duly sworn, on oath deposes and states that on the 16 day of February 2024, s/he served the within notice on the tenant named therein, as follows: *

1)    by delivering a copy thereof to the within named tenant, _____.

2)    by delivering a copy thereof to _____, a person above the age of thirteen years, residing on or in charge of the within described premises.

3)    by sending a copy thereof to said tenant by** certified/registered mail, with request for return of receipt from the addressee.

(4))    by posting a copy thereof on the main door of the within described premises, no one being in actual possession thereof.

             Signed:

             _____

### VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that she/he verily believes the same to be true.

_____

* Strike out all paragraphs not applicable
** Strike out word not applicable

**EXHIBIT H**

VI052:00100\6043165.1

Vivian Apartments
6807 N Sheridan Road
Chicago, IL 60626
(872) 444-2773

3/25/2024

To: Pedro Donaldson
6807 N Sheridan Rd #202
Chicago, IL 60626

Please be advised that we have recorded one of the following incidents in your tenant file and that the incident is a violation of your lease and/or House Rules & Regulations.

INFRACTION COMMITTED BY: **YOU** Date: **REPORTED 3/25/2024**

DESCRIPTION OF THE INCIDENT: Front door latched with a chain. This prohibited entry for a known unit inspection by management and a CHA member *from the inside.*

\_\_\_\_\_ 1. Destruction of property.
\_\_\_\_\_ 2. Disturbing or harassing of other tenants.
\_\_\_\_\_ 3. Activities on the premises which may be unlawful.
\_\_\_\_\_ 4. Tampering with mailboxes.
\_\_\_\_\_ 5. Removal of light bulbs or complex property.
\_\_\_\_\_ 6. Failure to maintain unit in a clean and sanitary condition.
\_\_\_\_\_ 7. Leaving garbage, trash or other obstruction in a public area.
\_\_\_\_\_ 8. Allowing unauthorized persons to live in unit.
xxxxx **9. Obstruction of Landlord's or his agent's right of entry under the provisions of your lease.**
\_\_\_\_\_ 10. Alteration or addition to property not authorized by Landlord or his agent.
\_\_\_\_\_ 11. Installation of appliance (stove, refrigerator, air conditioner, washing machine, locks, etc.,) without Prior written consent of management.
\_\_\_\_\_ 12. Breach of building security (leaving unlocked and/or blocking open exits, laundry room doors).
\_\_\_\_\_ 15. Breach of pet policy.
\_\_\_\_ 16. Other: Unauthorized Use of an amenity

REMARKS:

SINCE THIS IS A VIOLATION OF YOUR LEASE, IF NOT RECTIFIED IMMEDIATELY, AND/OR REPEATED, COULD RESULT IN US TERMINATING YOUR TENANCY.

If you wish to respond to this letter, please do so in writing. Your failure to respond will be considered by management to be an admission that the incident took place as alleged.

Agent for Vivian Apartments

**EXHIBIT I**

We're on the phone with them right now, they're insistent that the hold is because paperwork proving change-of-ownership has not been processed. They say the matter can only be resolved by your calling Owner Services. I'm telling them what you report about the other tenants being paid now, but CHA is just repeating for you to call to resolve. I'm sorry! I'm trying to push them for clarity but they're not providing it, because they repeat it's a landlord issue.

---

**From:** Darshaya Oden <darshaya@vivianchicago.com>
**Sent:** Thursday, November 9, 2023 3:46 PM
**To:** Swiecki, Eric E. (he/him/his) <Eric.Swiecki1@va.gov>
**Subject:** [EXTERNAL] Re: Pedro Donaldson

Hi Eric,

That issue was resolved a while ago and we have received payments for all our other residents from CHA except Mr. Donaldson. They told me it has to do with the voucher.

Get Outlook for iOS

---

**From:** Swiecki, Eric E. (he/him/his) <Eric.Swiecki1@va.gov>
**Sent:** Thursday, November 9, 2023 2:58:09 PM
**To:** Darshaya Oden <darshaya@vivianchicago.com>
**Subject:** RE: Pedro Donaldson

You don't often get email from eric.swiecki1@va.gov. Learn why this is important

Hello!
CHA told us that the issue isn't with Mr. Donaldson's voucher, and that it's a matter for property management to discuss with Owner Services. I gather you've already done that... Did they tell you anything specific about they haven't paid? On the tenant services end, they could only tell me that the unit was on a "hold," but I'm not familiar with what that might mean in this context.

---

**From:** Darshaya Oden <darshaya@vivianchicago.com>
**Sent:** Tuesday, November 7, 2023 1:18 PM
**To:** Swiecki, Eric E. (he/him/his) <Eric.Swiecki1@va.gov>
**Subject:** [EXTERNAL] Pedro Donaldson

Hi Eric,

Thanks for reaching out. We spoke with CHA and they stopped making payments for him in August. Not sure if the voucher has expired, but the current balance due is $4,491.59. I recommend him reaching out to CHA today to see what's going on.

Thanks,
Darshaya



Darshaya Oden | Community Manager



S P I R I T
M A N A G E M E N T
S E R V I C E S

**Lease Renewal Options**

01/30/2024

Dear .      ' and all occupants,

We have enjoyed the opportunity of having you as a resident at The Vivian Our records indicate that your lease expiration date is: 04/29/2024. Your current rent is $ 1496.00. Below you will find the lease renewal terms and rates we are currently offering.

**12-month term for $1511**

**Early Bird Incentive: Renew at $1496 if you sign your lease by 02/09/2024**

The offers are for base rent only and do not include any items such as utilities, garages, storage units, pet rent, etc. Note: If you are in a studio, you will pay an additional $82/month of utilities. If you are in a 1 bedroom, you will pay an additional $107 for utilities.

You may prefer the flexibility of continuing your residency on a month-to-month basis. Should you choose a month-to-month lease, please note that your rental rate will be full market rate plus a month-to-month fee of $200.00, effective the day after your current lease expires. All other terms and conditions of your last lease agreement will continue.

If we do not receive your decision prior to your lease expiration, you will be automatically enrolled into month-to-month status at the rate shown above.

Should you choose to vacate your apartment home, please remember in accordance with your lease agreement, we require a written 60-day notice to vacate from each lease holder submitted to the leasing office.

To renew your lease, please select your desired term through the portal, the email link, or you can reach out to the leasing office. We will electronically send your documents over for review and signature.

We have enjoyed your residency with us and sincerely hope that you will continue to call The Vivian home.

Sincerely,

The Vivian



leasing@vivianchicago.com