IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEDRO DONALDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24 C 8664 |
| ) | |
| NAKESHIA THOMPSON, 6807 ) | |
| NORTH SHERIDAN PROPERTY ) | |
| OWNERS, LLC, and SPIRIT ) | |
| MANAGEMENT SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pedro Donaldson has filed a *pro se* lawsuit regarding his tenancy in an apartment located at 6807 North Sheridan Road in Chicago. Mr. Donaldson is a veteran and says he was homeless and living on the CTA Blue Line. In 2019, Mr. Donaldson obtained assistance under the Department of Housing and Urban Development's Veterans Affairs Supportive Housing (VASH) program, which provides rental assistance for homeless veterans, along with other services. This enabled him to move into the apartment, which was in a building managed by an entity called Green Village. He signed a lease, which was renewed several times, including in 2023. In June 2023, Mr. Donaldson says, the building changed ownership. It is now owned by 6807 N. Sheridan Property Owners LLC and managed by Spirit Management Services, LLC and its employee Nakeshia Thompson. They are all named as defendants in this case.

In this lawsuit, Mr. Donaldson contends that starting in August 2023, he repeatedly experienced what he calls "wrongful entry" into his apartment by maintenance workers outside of scheduled appointments, sometimes when he was sleeping and unclothed. And starting in October 2023 and through August 2024, he received a series of eviction notices alleging past due rent, and eventually a notice of termination of tenancy and a later demand to "self-evict." According to Mr. Donaldson, building management claimed that his VASH voucher had expired, but he says that the Chicago Housing Authority (which evidently administers the vouchers) told him this was incorrect. And on at least one occasion, he says, he obtained a receipt from the CHA saying that it had paid the amount claimed due, but the defendants had refused to accept the payment. In July 2024, Mr. Donaldson alleges, the defendants "stopped accepting rent" and sent back an envelope with payment with the notation, "return to sender." In essence, Mr. Donaldson appears to contend, the defendants are essentially hounding him into leaving the apartment. He alleges discriminatory treatment because he is Black, a senior citizen, and a male, and based on his status as a veteran with a VASH subsidy.

Mr. Donaldson's lawsuit asserts claims for violation of his constitutional rights (Counts 1, 2, 5, and 9); discrimination in violation of 42 U.S.C. § 1981 (Counts 3, 4, 7, 8, 10, and 11); and intentional infliction of emotional distress (Count 6). The defendants have moved to dismiss the complaint in its entirety for failure to state a claim. The Court will discuss the outlines of each claim as it goes through them.

## Discussion

In considering defendants' motion, the Court reads Mr. Donaldson's complaint

liberally and takes his factual allegations as true. *See, e.g., Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023). The Court does not determine whether Mr. Donaldson's claims have factual merit but instead assesses only whether they state plausible claims for relief, which is "not an exacting standard." *Id.*

The defendants have submitted a good deal of material outside Mr. Donaldson's complaint, for the apparent purpose of contesting Mr. Donaldson's factual contentions. But the Court's review at this stage of the litigation is limited to Mr. Donaldson's complaint and the materials attached to it, *see* Fed. R. Civ. P. 10(c), 12(d), unless the Court first converts the defendants' motion to dismiss to a motion for summary judgment and gives Mr. Donaldson an opportunity to submit rebuttal evidence. *See* Fed. R. Civ. P. 12(d). The defendants have not asked the Court to do that, and the Court sees no good reason to do so on its own, particularly in a matter in which the opposing party is an unrepresented litigant. For these reasons, the Court declines to consider, for purposes of the motion to dismiss, the evidentiary material outside the complaint that defendants have provided.

**1.     Constitutional rights claims (Counts 1, 2, 5, and 9)**

Three of Mr. Donaldson's claims for violation of his constitutional rights—Counts 1, 2, and 9—involve two incidents when, he alleges, maintenance workers entered his apartment without his consent outside of scheduled appointments, and one incident when he says Ms. Thompson entered without his consent. The Constitution's Fourth Amendment (which Mr. Donaldson cites) applies to conduct by or attributable to the government, not to private entities and individuals like the defendants. *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Mr. Donaldson may be able to assert

state-law claims for intrusion upon seclusion based upon these events, but he has not attempted to do so in the current version of his complaint. The Court dismisses Counts 1, 2, and 9 for failure to state a claim.

Count 5 of Mr. Donaldson's complaint is a claim for conspiracy to violate his constitutional rights, specifically his right to due process of law. *See* Am. Compl. ¶¶ 108-09 (defendants "agreed and conspired together to violate Donaldson's Constitutional Rights"; defendants acted with the purpose and understanding "that it would deprive Donaldson of his right to due process guaranteed by the Fourteenth Amendment to the U.S. Constitution"). This claim fails for the same reasons as Counts 1, 2, and 9: the Constitution's due process protections apply to conduct by or attributable to the government, not private actors like the defendants. *See, e.g., Morin v. Consol. Rail Corp.*, 810 F.2d 720, 72 (7th Cir. 1987). The Court dismisses Count 5 for failure to state a claim.

**2.      Claims under 42 U.S.C. § 1981 (Counts 3, 4, 7, 8, 10, and 11)**

In his claims under 42 U.S.C. § 1981, Mr. Donaldson alleges that the November 2023 eviction notice (Count 3), the December 2023 eviction notice (Count 4), the February 2024 notice of non-renewal and termination of tenancy (Count 7), the June 2024 notice of non-renewal and termination of tenancy (Count 8), the July 2024 refusal to accept his rent payment and demand to self-evict (Count 10), and the August 2024 eviction notice (Count 11) were discriminatory and retaliatory[1] in violation of section

---

[1] Counts 10 and 11 include both discrimination and retaliation claims. The retaliation claims are that the actions described in Counts 10 and 11 were taken in retaliation for his complaints to the Veterans' Administration and others regarding earlier allegedly improper actions by the defendants.

4

1981.

Section 1981 provides, as relevant here, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The defendants argue that Mr. Donaldson has not adequately alleged a racial animus for the challenged actions.

The Court summarizes Mr. Donaldson's allegations bearing on the racial animus issue as follows. In counts 3 and 4, Mr. Donaldson alleges that in issuing the November 2023 and December 2023 eviction notices, the defendants treated alleged problems with his VASH housing voucher differently, and worse, from the way they treated problems with "Section 8" housing vouchers—working out the issues with the Section 8 tenants, but taking steps to evict him. He further alleges in these counts that the defendants' stated reasons for their conduct "are not the true reasons, but instead are a pretext to hide [the defendants'] racist animus." Compl. ¶¶ 82, 91.

In count 7, Mr. Donaldson alleges that when the defendants issued him the notice of non-renewal in February 2024, they treated him differently, and worse, than a white female tenant who was paying market rate rent. Compl. ¶ 132. He makes similar allegations in counts 8 and 10. Compl. ¶¶ 144, 158. In each of these counts, and in count 11, Mr. Donaldson alleges, as he did in the earlier counts, that the defendants' stated reasons for their actions are a pretext for racist animus. Compl. ¶¶ 137, 144, 158, 172.

In seeking dismissal of counts 3 and 4, defendants argue that in those claims, Mr. Donaldson "do[es] not allege any discrimination based on [his] race." Defs.' Mem. in

5

Support of Mot. to Dismiss at 11. That is incorrect: as the Court has just noted, Mr. Donaldson has expressly alleged that the reason for the defendants' challenged actions is "racist animus." The Court agrees with the defendants that Mr. Donaldson's allegation that the defendants treated him and his VASH voucher differently from the way it treated tenants with Section 8 vouchers does not suggest a racial animus—absent, for example, an allegation that the apartment building's Section 8 tenants were not, or predominantly were not, Black (an allegation that Mr. Donaldson does not make). But that does not matter for purposes of a motion to dismiss for failure to state a claim. To survive a Rule 12(b)(6) motion, a simple allegation that the defendant acted for discriminatory reasons is enough; a plaintiff is not required to plead facts that give rise to an inference of discrimination. The Supreme Court so held in *Swierkiewicz v. Sorema, S.A.*, 534 U.S. 506 (2002), and even though *Swierkiewicz* predated *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it survives post-*Twombly*. *See, e.g., Collins v. Ctrs. for Medicare and Medicaid Servs.*, No. 24-2557, 2025 WL 599630, at *2 (7th Cir. Feb. 25, 2025); *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (Title VII case; plaintiff "needed only to allege—as he did here—that the District fired him because of his race.").

 Mr. Donaldson has made such allegations in all six of his race discrimination claims. That is sufficient to state a claim for relief. And in counts 8, 10, and 11, he alleges more: a specific allegation that he was treated worse regarding lease renewal than an arguably similarly situated white tenant.

 This is enough to permit Mr. Donaldson's section 1981 race discrimination claims to survive. The Court notes that the defendants have alleged, in some detail, that they

*did* offer Mr. Donaldson a lease renewal, repeatedly, but he never signed it. If that is true, then Mr. Donaldson's claims against the defendants may not hold water. But as the Court has noted, the law is clear that a court considers only the complaint and its attachments (or other documents to which the complaint expressly refers) on a motion to dismiss for failure to state a claim. A court cannot, at this stage of a case, appropriately decide which side's factual narrative is more persuasive. The Court thus does not consider, at this point, defendants' factual assertions that contradict Mr. Donaldson's claims. The defendants are, of course, free to move for summary judgment if their case is as rock-solid as they appear to believe.

The section 1981 claims asserted by Mr. Donaldson in counts 10 and 11 also include allegations of retaliation. A claim of retaliation requires a plaintiff to allege that he engaged in activity protected by the statute; suffered an adverse action; and there was a causal connection between the two. *See, e.g., Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 958 (7th Cir. 2024). And to constitute activity protected by section 1981, the plaintiff's underlying complaint must involve discrimination prohibited by that statute, *see, e.g., Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998), namely, discrimination based on race or ethnicity. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). In his current complaint, Mr. Donaldson does allege that he made complaints to the VA and others, but he does not allege that in those complaints he indicated that he was being discriminated against based on his race. Without that, his retaliation claims fall short of the mark. The Court dismisses the retaliation claims found in counts 10 and 11, with leave to amend.

3.      **State law claim for intentional infliction of emotional distress (Count 6)**

7

In count 6 of Mr. Donaldson's complaint, he asserts a claim for intentional infliction of emotional distress (IIED). To sustain an IIED claim under Illinois law, a plaintiff must establish that "(1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict emotional distress or knew there was at least a high probability that he would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010). To satisfy the first element, the defendant's conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted).

Under Mr. Donaldson's version of the events—which, again, the Court is not questioning at this point—the gist of his claims as suggested earlier) is that the defendants are trying to hound him into leaving his apartment and, arguably, put him back on the streets, by refusing to accept his VA-approved rent voucher and by sending people into his apartment without permission when he was inside. Taking that as true, as required at this stage, the Court is not persuaded that it cannot add up to a viable IIED claim. The defendants have a completely different version of the events, and it will ultimately be determined who is right. But that is a determination for another day. Based on what Mr. Donaldson alleges in his complaint, the Court declines to dismiss his IIED claim.

## Conclusion

For the reasons stated above, the Court dismisses Counts 1, 2, 5, and 9 of plaintiff's amended complaint, as well as the retaliation claims contained in Counts 10

8

and 11.  The Court otherwise denies defendants' motion to dismiss [dkt. no. 17].  The case is set for an in-person status hearing on June 27, 2025 at 9:45 a.m., in Courtroom 2103.  Plaintiff and counsel for defendant are directed to appear.

Date:  May 28, 2025

                                                        _____
                                                        MATTHEW F. KENNELLY
                                                        United States District Judge