IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO DONALDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24 C 8664 |
| | ) | |
| NAKESHIA THOMPSON, 6807 | ) | |
| NORTH SHERIDAN PROPERTY | ) | |
| OWNERS, LLC, and SPIRIT | ) | |
| MANAGEMENT SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pedro Donaldson has filed a *pro se* lawsuit regarding his tenancy in an

apartment located at 6807 North Sheridan Road in Chicago. Mr. Donaldson asserts

claims based on violation of the Fair Debt Collection Practices Act (FDCPA); common

law fraud; discrimination and retaliation based on his race, age, sex, and status as a

veteran in violation of 42 U.S.C. § 1981; intentional inflection of emotional distress; and

violation of the Illinois Landlord Retaliation Act. The defendants, Nakeshia Thompson,

6807 North Sheridan Property Owners, LLC, and Spirit Management Services, LLC,

have moved for summary judgment on all claims.

For the reasons stated below, the Court grants the defendants' motion for

summary judgment.

## Background

Mr. Donaldson did not respond to the defendants' statement of facts. Although

courts construe a *pro se* litigant's submissions liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal or local procedural rules. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Collins v. State of Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). Thus, the facts set forth below are taken from the defendants' affidavit and documents submitted in support of their Local Rule 56.1(a)(3) statement, unless otherwise noted. *See* N.D. Ill. L.R. 56.1(b)(3)(C).

Mr. Donaldson is a veteran and, according to his complaint, was homeless and living on the CTA Blue Line. In 2019, Mr. Donaldson obtained assistance under the Department of Housing and Urban Development's Veterans Affairs Supportive Housing (VASH) program, which provides rental assistance for homeless veterans, along with other services.

From 2019 to 2025, Mr. Donaldson lived in a building owned by 6807 North Sheridan Property Owners. Spirit Management Services has managed the building since June 2023. Nakeshia Thompson works for Spirit and has been the property manager for 6807 North Sheridan since December 2023.

Mr. Donaldson signed a lease agreement that began on May 9, 2022 and ended May 29, 2023. The defendants believe that Mr. Donaldson's lease was extended to December 12, 2023, at some point before Spirit began managing the building. Although Mr. Donaldson's tenant file does not contain a copy of a renewal lease agreement, the property management software Spirit received when it began managing the property listed December 12, 2023 as the date Mr. Donaldson's lease expired.

The CHA (which administers the VASH vouchers) stopped making payments for

2

Mr. Donaldson's rent in August 2023 because it believed there was a change in ownership at the property. As best the Court can tell, this was not actually a change in ownership but instead a change in the property's management company. From October 2023 through December 2023, Mr. Donaldson received eviction notices stating that his rent was past due. On December 26, 2023, Ms. Thompson emailed the CHA to inquire about Mr. Donaldson's past due rent balance. The next day, the CHA made a payment for Mr. Donaldson's past due rent. This payment did not include utilities, renters' insurance fees, late fees, and month-to-month fees because those fees were not covered by Mr. Donaldson's subsidy.

On October 23, 2023, Spirit sent Mr. Donaldson a lease renewal packet via email. Mr. Donaldson did not respond. Because his lease expired on December 12, 2023, he became a month-to-month tenant after that date. On December 28, 2023, Mr. Donaldson verbally accepted the terms of a lease renewal in a discussion with Ms. Thompson at the on-site management office. He also indicated that he did not use email and thus could not access the lease agreement if it was emailed to him. Ms. Thompson offered to print a hard copy of the renewal lease agreement for Mr. Donaldson to sign if he returned to the management office the next day. She also offered alternative dates for Mr. Donaldson to pick up a hard copy of the renewal lease agreement. Mr. Donaldson did not return to the office to pick up the hard copy of the renewal lease agreement. Ms. Thompson also asked the CHA how to get Mr. Donaldson's renewal lease approved for continued funding through the CHA. The CHA replied that she needed to send the new lease, once completed, to the CHA.

In January 2024, Mr. Donaldson paid his portion of his rent at the management

office.  Ms. Thompson again requested that Mr. Donaldson sign the lease renewal, but he refused.  Ms. Thompson informed him that he could be evicted and possibly lose his VASH subsidy if he did not sign a lease renewal.  Ms. Thompson then emailed the CHA to advise that Mr. Donaldson had not signed the renewal lease agreement and to ask the CHA to speak with him to remind him to sign the agreement.  Mr. Donaldson never signed the renewal lease agreement.  On February 20, 2024, Spirit issued Mr. Donaldson a 120-day notice of non-renewal and termination due to his failure to sign a lease agreement.

Around this same time, the CHA informed Ms. Thompson that Mr. Donaldson's unit must undergo an annual inspection prior to the renewal of his lease.  The CHA later informed Ms. Thompson that inspections scheduled for February and March 2024 did not take place because Mr. Donaldson did not grant the CHA inspectors access to the unit.  On March 26, 2024, the CHA informed Ms. Thompson that it was terminating Mr. Donaldson's VASH subsidy.  In August 2024, Mr. Donaldson received another eviction notice stating that his rent was past due.

As of August 4, 2025, Mr. Donaldson had not signed a renewal lease agreement and owed $3,517.39 in late fees, utilities and renter's insurance that was not covered by his VASH subsidy.  The Circuit Court of Cook County entered an eviction order against Mr. Donaldson, and he was evicted from his unit on August 26, 2025, a little under a year after filing this lawsuit.

Mr. Donaldson filed this lawsuit in September 2024.  In June 2025, he filed an amended complaint.  His amended complaint asserts claims for violation of the FDCPA and common law fraud (Counts 1, 2, 3, 4, 5, and 6); discrimination and retaliation based

4

on his race, age, sex, and status as a veteran in violation of 42 U.S.C. § 1981 (Counts 7, 8, 10, 11, 12); intentional infliction of emotional distress (Count 9); and retaliation in violation of the Illinois Landlord Retaliation Act (Count 13).

The defendants have moved for summary judgment on all claims.

## Discussion

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court ruling on a motion for summary judgment construes all facts and reasonable inferences in the light most favorable to the nonmoving party, in this case Mr. Donaldson. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Because Mr. Donaldson is a *pro se* plaintiff, the Court will construe his response liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (internal quotation marks and citation omitted).

## A. Mr. Donaldson's failure to respond

Mr. Donaldson filed a very brief response to the defendants' motion for summary judgment. The response did not point to any evidence but instead stated that the Court has previously determined that certain counts "'contain genuine issues as to any material fact', and therefore, summary judgment is not appropriate." Pl.'s Resp. at 2. The Court previously held that Mr. Donaldson had sufficiently pleaded claims under 42

5

U.S.C. § 1981 and for intentional infliction of emotional distress. *Donaldson v. Thompson*, No. 24 C 8664, 2025 WL 1518060 (N.D. Ill. May 28, 2025). But that was simply a determination that Mr. Donaldson's complaint was sufficient. The Court did not make any findings about whether there were any disputed issues of material fact.

The defendants argue that Mr. Donaldson's failure to substantively respond to their motion for summary judgment requires the Court to grant summary judgment in their favor. It is true that the Seventh Circuit has found that a party's failure to respond to an opposing party's argument implies concession and waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). But the court has also stated that the failure to respond to an argument "is not a basis for automatically granting summary judgment as some kind of sanction." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant still [has] to show that summary judgment [is] proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant." *Id.* The Court thus evaluates each claim below to determine if summary judgment is appropriate.

## B.     Fraud claims (Counts 1, 2, 3, 4, 5, and 6)

Mr. Donaldson asserts six claims that his complaint mistakenly identifies as violations of Federal Rule of Civil Procedure 9(b). As the defendants note, Rule 9(b) applies heightened pleading requirements to a plaintiff's claims; it does not create a cause of action. Instead, Mr. Donaldson's claims appear to allege violations of the FDCPA and common law fraud. The Court will evaluate the claims based on this understanding.

6

### 1. FDCPA

Mr. Donaldson alleges that defendants violated the FDCPA "by alleging that [his] VASH subsidy had expired, [he] owed $3,112.79, and serv[ing] him an [eviction notice]." Am. Comp., Count 1, ¶ 66. Mr. Donaldson asserts claims based on substantially the same allegations for four additional eviction notices (Counts 2, 3, 4, and 5) and Ms. Thompson's refusal to clear past due rent until it was reflected in her records as received (Count 6). *Id.*, ¶¶ 71, 77, 83, 94, 107. Mr. Donaldson does not specify which section of the FDCPA he contends the defendants violated.

The defendants argue that Mr. Donaldson lacks standing to bring his claims under the FDCPA because he knew the CHA's processing of his voucher caused the defendants to issue the notices. Thus, according to the defendants, Mr. Donaldson lacks any actual or appreciable risk of harm as required to establish standing under Article III and the FDCPA. Mr. Donaldson does not refute this argument.

A plaintiff "cannot demonstrate standing simply by pointing to [a defendant's] procedural violation. [He] must show that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Casillas v. Madison Avenue Assoc., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (internal quotation marks and citation omitted). "The Fair Debt Collection Practices Act seeks to protect debtors from the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Id.*

Mr. Donaldson has not pointed to—and the Court has not found—any allegation of actual injury or appreciable harm that he suffered based on his FDCPA claims. Instead, for each count that invokes the FDCPA, Mr. Donaldson alleges that, although

the CHA did not pay the required rent for a period of time, it ultimately made the payments. Am. Compl. ¶¶ 67, 73, 79, 90, 100, 112. He does not allege that he paid additional rent, or that he was ultimately evicted, based on the alleged statements. Mr. Donaldson therefore lacks an injury sufficient to confer standing to bring his claims under the FDCPA.

**2. Common law fraud**

In Counts 2, 3, 4, 5, and 6, Mr. Donaldson also alleges that the defendants' conduct constituted common law fraud. To succeed on a common law fraud claim under Illinois law, a plaintiff must prove: (1) a false statement of material fact; (2) defendant's knowledge of falsity; (3) defendant's intent to induce the plaintiff to act; (4) plaintiff's reasonable reliance; and (5) damages. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (applying Illinois law).

Mr. Donaldson alleges that the defendants' statements that his VASH subsidy had expired, that he owed past due rent, and the lease renewal offer are false statements of material fact. The defendants argue that Mr. Donaldson failed to plead a false statement of material fact or damages.

Mr. Donaldson does not contend that he suffered any damages based on simple receipt of the eviction notices or from Ms. Thompson's refusal to clear his past due rent until the receipt of the funds were reflected in her records. Instead, Mr. Donaldson's own allegations recognize that the CHA ultimately paid the rent due. He was not evicted for another year and at that point was evicted based on his continued refusal to renew his lease and pay overdue fees. For these reasons, Mr. Donaldson cannot sustain a claim for common law fraud.

Furthermore, Mr. Donaldson has not pointed to any evidence to dispute that the CHA was not paying his VASH subsidy for several months at the end of 2023, resulting in him owing past due rent.  Mr. Donaldson also provides no evidence to dispute the fact that he did not sign a renewal lease agreement, despite multiple requests.  Because CHA did not pay the required rent and Mr. Donaldson refused to renew his lease, the defendants sent Mr. Donaldson eviction notices.  In sum, Mr. Donaldson has not presented any evidence that would permit a reasonable jury to find that the defendants made false statements.

For these reasons, the defendants are entitled to summary judgment on Mr. Donaldson's common law fraud claims.

## C.    Claims under 42 U.S.C. § 1981 (Counts 7, 8, 10, 11, 12)

In his claims under 42 U.S.C. § 1981, Mr. Donaldson alleges that the November 2023 eviction notice (Count 7), the December 2023 eviction notice (Count 8), the February 2024 notice of non-renewal and termination of tenancy (Counts 10), the February 2024 notice of non-renewal and termination of tenancy (Count 11), and the July 2024 refusal to accept his rent payment and demand to self-evict (Count 12) were discriminatory in violation of section 1981.  He also alleges that the February 2024 notice of non-renewal and termination of tenancy (Count 11) and the July 2024 refusal to accept his rent payment and demand to self-evict (Count 12) were retaliatory in violation of section 1981.

### 1.    Discrimination

Section 1981 provides, as relevant here, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]" *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). If a plaintiff provides evidence that would permit a jury to infer discriminatory intent, "the burden of production shifts to the [defendant] to articulate a legitimate, nondiscriminatory reason for the adverse [action]." *Id.* "If the plaintiff does so, the burden then shifts back to the plaintiff to provide evidence establishing a genuine dispute about whether the [defendant's] stated reason was a pretext for prohibited discrimination." *Id.*

The defendants argue that Mr. Donaldson, who is Black, cannot succeed on his claims under section 1981 because the CHA did not pay his rent for several months and he was given several opportunities to renew his lease.[1] In other words, the defendants contend that they had legitimate, non-discriminatory reasons to terminate Mr. Donaldson's tenancy: his past due rent and refusal to sign a renewal lease agreement. Mr. Donaldson offers no evidence to show the existence of a genuine factual dispute over whether the defendants' reasons were pretextual. The Court therefore concludes that no reasonable jury could find in Mr. Donaldson's favor on his claims for discrimination under section 1981.

### 2. Retaliation

The section 1981 claims asserted by Mr. Donaldson in counts 11 and 12 also

---

[1] The defendants also argue that Mr. Donaldson failed to sufficiently allege discrimination claims under section 1981. The Court previously addressed this argument and found that Mr. Donaldson's allegations were sufficient for pleading purposes. *Donaldson*, 2025 WL 1518060, at *3. The defendants have provided no compelling reason to change this conclusion. That said, for the reasons discussed, no reasonable jury could find for Mr. Donaldson on those claims, and thus summary judgment in the defendants' favor is appropriate.

allege retaliation. A claim of retaliation under section 1981 requires a plaintiff to allege that he engaged in activity protected by the statute; suffered an adverse action; and there was a causal connection between the two. *See, e.g., Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 958 (7th Cir. 2024). And to constitute activity protected by section 1981, the plaintiff's underlying complaint must involve discrimination prohibited by that statute, *see, e.g., Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998), namely, discrimination based on race or ethnicity. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

The defendants argue that none of Mr. Donaldson's alleged complaints to third parties involve any claims of racial or ethnic discrimination. The Court previously dismissed Mr. Donaldson's retaliation claims, with leave to amend, because he did not allege that when he made complaints to the VA and others, he indicated that he was being discriminated against based on his race. *Donaldson*, 2025 WL 1518060, at *3. Mr. Donaldson's amended complaint does not provide any new allegations on this point, nor has he offered anything along these lines in his response to the defendants' motion for summary judgment.

Additionally, the defendants presented evidence that they attempted to work with Mr. Donaldson's social worker and others to effectuate the lease renewal, but he refused to sign it. Again, this evidence provides legitimate, non-discriminatory reasons for the defendants' conduct, including the sending of eviction notices and a notice of termination of tenancy. Mr. Donaldson does not point to any evidence that would give rise to a genuine dispute on this point. Thus no reasonable jury could find in Mr.

11

Donaldson's favor on his retaliation claims under section 1981.[2]

## D.      State law claim for intentional infliction of emotional distress (Count 9)

In count 9 of Mr. Donaldson's amended complaint, he asserts a claim for intentional infliction of emotional distress (IIED).  To sustain an IIED claim under Illinois law, a plaintiff must establish that:  "(1) the defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict emotional distress or knew there was at least a high probability that he would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress."  *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010).  To satisfy the first element, the defendant's conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community."  *Id.* (internal quotation marks and citation omitted).

The defendants argue that the eviction notices were justified based on Mr. Donaldson's overdue rent and failure to renew his lease and, accordingly, he cannot prove an IIED claim based on these actions.  The defendants also point to evidence that they sent people to his apartment only when he requested repairs.  Mr. Donaldson offers no evidence to dispute the defendants' version of events.  And allegations alone are insufficient at this stage of the case.  The Court concludes that no reasonable jury

---

[2] The defendants also argue that the retaliation claims are barred by *res judicata* because they were previously litigated in state court.  Although the defendants argue that Mr. Donaldson appeared and litigated a retaliation claim, the state court order notes that the eviction order was entered following a bench trial "conducted pursuant to 735 ILCS 5/9-109 which provides, 'if the defendant does not appear, having been duly summoned as herein provided, the trial may proceed ex parte, and may be tried by the court, without a jury."  Defs.' Mem. of L., Ex. M at 3.  This suggests that Mr. Donaldson did not appear to litigate the retaliation claim.  Regardless, the Court need not address this argument, as summary judgment is appropriate for the reasons discussed above.

could find in Mr. Donaldson's favor on his IIED claim.

### E.    Illinois Landlord Retaliation Act claim (Count 13)

The Illinois Landlord Retaliation Act prohibits certain retaliatory actions against tenants including terminating a tenancy, decreasing services, or refusing to renew a lease because the tenant has, in good faith, engaged in certain protected conduct.  765 ILCS 721/5.  "An action is not retaliatory if the landlord can prove a legitimate, non-retaliatory basis for the action; or the landlord began the action before the tenant engaged in the protected activity."  765 ILCS 721/15.

The defendants argue that they had a legitimate, non-retaliatory basis for their conduct:  nonpayment of Mr. Donaldson's rent subsidy and his failure to sign a renewal lease agreement.[3]  Mr. Donaldson does not provide any evidence to rebut this legitimate, non-retaliatory basis.  Thus no reasonable jury could find in Mr. Donaldson's favor on his claim under the Illinois Landlord Retaliation Act.

Finally, Ms. Thompson and Spirit argue that they must be dismissed from the case because they were acting as agents of 2807 North Sheridan Property Owners, LLC.  Because the Court has concluded that summary judgment is appropriate in favor of all the defendants on all of Mr. Donaldson's claims, it need not address this additional argument.

### Conclusion

For the reasons stated above, the Court grants the defendants' motion for

---

[3] The defendants also note that Mr. Donaldson has not asked the Court to exercise supplemental jurisdiction over his state law claims.  But that is implicit in his inclusion of the claims in his amended complaint.

summary judgment [dkt. nos. 46, 49[4]] on all of the plaintiff's claims.  The Clerk is directed to enter judgment stating:  Judgment is entered in favor of defendants Nakeshia Thompson, 6807 North Sheridan Property Owners, LLC, and Spirit Management Services, LLC and against plaintiff Pedro Donaldson.

Date:  June 5, 2026

_____
MATTHEW F. KENNELLY
United States District Judge

---

[4] The defendants also filed their memorandum in support of their motion for summary judgment as a separate motion [dkt. no. 46].  That motion is terminated.